UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FEDERAL HOUSING FINANCE AGENCY, AS CONSERVATOR FOR THE FEDERAL NATIONAL MORTGAGE ASSOCIATION AND THE FEDERAL HOME LOAN MORTGAGE CORPORATION,<br><br>Plaintiff,<br><br>-v-<br><br>UBS AMERICAS, INC., *et al*.<br><br>Defendants. | Case No. 11 CIV. 5201 (DLC)<br><br>**PLAINTIFF FHFA'S PROPOSAL FOR CERTAIN CASE MANAGEMENT ISSUES** |
| Other Cases Brought By Plaintiff:<br><br>11 Civ. 6188 (DLC)<br>11 Civ. 6189 (DLC)<br>11 Civ. 6190 (DLC)<br>11 Civ. 6192 (DLC)<br>11 Civ. 6193 (DLC)<br>11 Civ. 6195 (DLC)<br>11 Civ. 6196 (DLC)<br>11 Civ. 6198 (DLC)<br>11 Civ. 6200 (DLC)<br>11 Civ. 6201 (DLC)<br>11 Civ. 6202 (DLC)<br>11 Civ. 6203 (DLC)<br>11 Civ. 6739 (DLC)<br>11 Civ. 6916 (DLC)<br>11 Civ. 7010 (DLC)<br>11 Civ. 7048 (DLC) | |

Pursuant to this Court's Order dated December 5, 2011 in the above-captioned cases (the "Cases"), Plaintiff Federal Housing Finance Agency ("Plaintiff"), as Conservator for the Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Corporation ("Freddie Mac") (together, the "GSEs"), respectfully submits this report and proposal regarding "the sequencing of discovery, protective orders/ e-discovery, the sampling of

1

loan files, limits on depositions, and the time frames regarding document production, depositions, and expert discovery."[1] As the parties have not reached agreement on (i) limitations on depositions and interrogatories; (ii) the use of statistical sampling for loan files in discovery and at summary judgment and trial; and (iii) the sequence of and timeframes for discovery, the below report sets forth FHFA's proposal regarding those case management issues.

## I. BACKGROUND

FHFA has attempted to reach agreement with Defendants on the matters raised in the Court's December 5 Order. Although FHFA and Defendants participated in four telephonic meet-and-confers to discuss the parties' responses to the Court's December 5 Order, Defendants did not provide written comments on FHFA's proposed Joint Report (provided to Defendants on December 27) until January 9, 2012—<u>one day</u> before the Joint Report was due to the Court. Prior to January 9, Defendants refused to offer any serious counterproposal, other than to state that they believed it was premature to set numerical limits on discovery, and that discovery should be equally allocated between the two sides despite a vastly disproportionate number of Defendants. Moreover, Defendants were reluctant to provide any information in advance of this Court's decision on the motion to dismiss that would aid the parties in determining appropriate limits.

Defendants' tactics are consistent with their general approach in these Cases, which is to push discovery further and further down the road.[2] By contrast, FHFA has proposed a clear path forward that would enable the parties to begin discovery as soon as this Court rules on the

---

[1] This Report applies only to those actions filed by plaintiff FHFA that are currently pending before this Court or that are transferred or ultimately removed to this Court.

[2] Although Defendants have agreed in the Joint Report to meet and confer in good faith in the future, FHFA reserves the right to seek relief from the Court should Defendants fail to do so.

2

motion to dismiss in 11 Civ. 5201 (*FHFA v. UBS*). FHFA believes that the below schedule and approach will permit the parties to lay the groundwork for discovery to move forward in a fair and efficient manner, and makes the best use of the time between now and the Court's ruling on the motion to dismiss in 11 Civ. 5201.

## II. LIMITATIONS ON DEPOSITIONS AND INTERROGATORIES

### A. Depositions

FHFA proposes that the general 10-deposition limit under Fed. R. Civ. P. 30 be modified to accommodate the complex nature of the Cases, while also taking into account the significant degree of factual overlap between the various Cases. Under FHFA's proposal, all parties would be subject to the same number of depositions, in an amount that is both sufficient to obtain relevant information while not being unduly burdensome for any party.

FHFA proposes that it may take the deposition of <u>up to 20 witnesses</u> from <u>each institutional Defendant</u>, in the aggregate across all Cases (excluding 30(b)(6) depositions and depositions of Individual Defendants). FHFA has further proposed that any deposition of a fact witness be limited to two seven-hour days, and any deposition of an Individual Defendant be limited to one seven-hour day.

FHFA proposes that Defendants (as a group) may take the depositions of up to 20 witnesses from <u>each GSE</u> (*i.e.*, 20 from Fannie Mae and 20 from Freddie Mac). FHFA proposes that any deposition of a fact witness be limited to two seven-hour days, but that such time period may be extended upon a showing of good cause if that witness was involved in numerous Securitizations across all Cases.

In addition, although it unlikely that Defendants will have a legitimate need to depose any FHFA witnesses given that the purchases of the residential mortgage-backed securities were made by the GSEs, to the extent Defendants seek to depose current or former employees of

3

FHFA, FHFA has proposed that such depositions be limited in scope (*e.g.*, with respect to procedures surrounding the appointment of the Acting Director of FHFA, which is an issue raised in Defendants' motion to dismiss in the 11 Civ. 5201 action), and subject to a reasonable limit of depositions on current or former FHFA employees.

Defendants have rejected FHFA's proposals, and argue that, regardless of how many depositions Plaintiff is entitled to take, Defendants as a group should receive the same number of depositions of GSE witnesses. That is, Defendants propose that if Defendants took 50 depositions of the GSEs, FHFA would be entitled to only 50 depositions across 17 cases where there are 83 different entity Defendants—less than one deposition per institution. Such an approach has no basis in the Federal Rules of Civil Procedure or case law, and contravenes the spirit of this Court's prior statements that these cases have not been consolidated into a single action.

Instead, FHFA's proposal is more reasonable and fair in that each party is subject to no more than 20 depositions. That FHFA will be permitted to take a larger aggregate number of depositions than Defendants follows directly from the fact that there are many more Defendants than the two GSEs. Moreover, Defendants originated, arranged, underwrote, and marketed these securitizations; by contrast the GSEs simply acted as investors in the RMBS certificates. It stands to reason that in light of their extensive role, the Defendants will have much more relevant information on a wide range of topics than the GSEs. Holding FHFA's depositions hostage to Defendants' demand that it receive the same number of depositions as FHFA denies FHFA the opportunity to depose a significant number of the Defendants in any meaningful way (or else subject itself to an arbitrarily large number of depositions as a cost of seeking necessary and

proper discovery). Accordingly, FHFA's proposal calls for a reasonable limitation whereby each party would be subject to not more than 20 depositions.

### B. Interrogatories and Requests for Admission

FHFA proposes that Plaintiff and Defendants each submit a single set of interrogatories and requests for admission pursuant to Fed. R. Civ. P. 33, 36 and Local Civil Rule 33.3. Under this proposal, Defendants as a group would serve Plaintiff with no more than 50 interrogatories or requests for admission, including all discrete subparts, in the aggregate across all Cases. Plaintiff would serve each Defendant, including Individual Defendants, with <u>no more than 50</u> interrogatories or requests for admission, including all discrete subparts, in the aggregate <u>across all Cases</u>. All interrogatories and requests for admission would be subject to the scope limitations of Fed. R. Civ. P. 33(b) and Local Civil Rule 33.3, and Fed. R. Civ. P. 36, respectively.

Under FHFA's proposal, Plaintiff and each of the Defendants would be subject to the same total number of interrogatories and requests for admission, not to exceed the 50-interrogatory/request for admission limit. Although interrogatory limitations are generally on a per-party basis, such an approach is not efficient across 17 actions with the same Plaintiff, many of the same Defendants, and similar factual issues raised in all 17 Cases. In light of that overlap, and the potentially large burden of permitting over a hundred different defendants to *each* serve on FHFA 25 interrogatories and unlimited requests for admission under the Federal Rules of Civil Procedure, FHFA has proposed a general 50-interrogatory/request for admission limit to which Plaintiff and each Defendant would be subject.

As with depositions, Defendants have refused to make a serious counterproposal, but have insisted that the number of interrogatories permitted to each side be equal. For the reasons discussed above in Section II.A, *supra*, Defendants' position is unreasonable and unworkable; in

5

this context, it would potentially result in *thousands* of interrogatories being served upon Plaintiff. Defendants' position is especially unreasonable in light of Plaintiff's offer to limit its interrogatories and request for admission to 50.

## III.   SEQUENCING OF DISCOVERY

### A.   Custodian and Search Term Lists

To ensure that the parties can proceed expeditiously with discovery once the Court issues its decision on the motion to dismiss, FHFA proposes that, by January 27, 2012, each Defendant exchange with FHFA the names and titles of the custodians whose files, both electronic and hard copy, it intends to search for purposes of discovery in the Cases. Similarly, FHFA has proposed that FHFA exchange with Defendants the names and titles of the custodians whose files, both electronic and hard copy, it intends to search for purposes of discovery in each Case.

FHFA further proposes that, following a meet and confer shortly thereafter, each group of affiliated Defendants jointly provide a proposed single set of search terms that it expects to employ for the purpose of locating and gathering electronic documents for production to Plaintiff. Similarly, Plaintiff agrees to provide a proposed single set of search terms that it expects to employ for the purpose of locating and gathering electronic documents of Plaintiff for production to Defendants. All parties would be entitled to supplement such proposed search terms as necessary based on the documents produced in discovery. Further, Plaintiff and Defendants would reserve the right to make targeted search term proposals addressed to certain Securitizations or other Case-specific issues.

Although the parties agree that the exchange of document custodians and search terms should be one of the first items exchanged between the parties, the parties disagree about whether such exchange should happen prior to the decision on the pending motion to dismiss.

FHFA believes establishing such a schedule at the outset of discovery is crucial to ensuring that discovery proceeds expeditiously. As an initial matter, there is no reason to delay assembling proposed custodian and search term lists. Assembling such information will undoubtedly take time, and pushing it off will only delay the commencement of discovery. Once custodian lists and search terms have been exchanged and finalized, the parties can run the search terms after the Court rules on the motion to dismiss in 11 Civ. 5201.

In addition, to the extent Defendants are truly unable, as they claimed during the meet and confers, to anticipate what custodians or search terms might be relevant to FHFA's claims, FHFA has proposed (and Defendants have rejected) that it be permitted to serve some initial document requests on Defendants within the next 20 days while holding the return date open pending resolution of the motion to dismiss, in order to provide Defendants with additional guidance as to the custodians and search terms relevant to the Cases. Defendants' unwillingness to agree to such a proposal reveals the disingenuousness of their claim that they lack sufficient information to formulate custodians and search terms, and makes clear that their true strategy is to delay laying any groundwork for discovery until the Court rules on the motion to dismiss.

In any event, the parties should be well-positioned to exchange an *initial* set of search terms and custodians by January 27. Each complaint identifies the securitizations at issue, and it should not be difficult for Defendants to identify which of their private label securities personnel had significant roles in dealing with Fannie Mae and Freddie Mac. Moreover, Defendants have already proposed likely topics of discovery in their submission responding to the October 19, 2011, Order of Judge Kaplan on the efficient handling of the Cases; an initial set of search terms could be drafted based on that proposal. *See* Dkt. 10 (Defendants' Proposal) at 10-11. In light of these facts, Defendants' present reticence appears to be little more than a delay tactic.

### B.     Prioritization of Certain Categories of Document Production

As reflected in the Joint Report, the parties have agreed to meet and confer regarding each side's requested categories of documents for prioritization. Plaintiff has informed Defendants that it is seeking to prioritize the production of the following categories of documents: (i) loan origination and servicing files, (ii) loan underwriting guidelines, (iii) any reports or findings regarding the mortgage loans or samples of mortgage loans reviewed by third party due diligence firms on behalf of the securities underwriter or broker dealer defendants; (iv) documents produced to government agencies relating to policies, practices and/or procedures in the origination, servicing, underwriting and/or selling of mortgage loans in the secondary market through the securitization process; (v) any prior deposition transcripts of witnesses from other RMBS litigations (whether involving Defendants or others), who were involved in the origination, underwriting and/or selling of mortgage loans in the secondary market through the securitization process; and (vi) any transcripts of Defendant witnesses who testified before any government committee, subcommittee, regulatory agency, or investigatory body on the origination, underwriting and/or selling of mortgage loans in the secondary market through the securitization process.

With respect to loan origination and servicing files, such information should be within the custody, possession, or control of one or more of the entity Defendants, as such information would have been reviewed or at least received by multiple entities involved in the Securitizations. These files are relevant to FHFA's claims because they will reveal whether the statements in the Registration Statements regarding the mortgage loans in the securitizations were true and correct. Moreover, the loan origination and servicing files will reveal the true credit characteristics of the mortgage loans, and whether the loans were underwritten and

serviced in accordance with the applicable guidelines and prudent and customary industry standards.

Likewise, the underwriting guidelines for the loans should generally be within the possession, custody, or control of one or more of the entity Defendants, as such information would have been reviewed or at least received by multiple entities involved in the Securitizations. These guidelines are relevant to determining whether the loans were originated in compliance with the applicable underwriting guidelines.

Similarly, documents relating to any reports or findings regarding the mortgage loans or samples of mortgage loans reviewed by third party due diligence firms on behalf of the securities underwriter or broker dealer defendants are also relevant to establishing the true credit quality of the mortgage loans, whether the statements in the Registration Statements were accurate, and the knowledge of certain Defendants regarding the same.

Finally, to the extent that any of the Defendants produced documents to any government agency relating to policies, practices, and/or procedures in the origination, underwriting, servicing, and/or selling of mortgage loans in the secondary market through the securitization process, such documents are relatively easy to collect and produce, as are any prior deposition transcripts and accompanying exhibits. The production of such documents and prior deposition transcripts from other RMBS litigations, helps to streamline the discovery process by allowing FHFA to build on the documents previously produced and testimony taken, streamline its discovery requests, and reduce the burden to Defendants by allowing them to re-produce previously produced documents and testimony.

Each of these categories of documents is within the possession, custody, or control of one or more of the entity Defendants, and should be readily identified, collected, and produced to

FHFA. Such categories of documents are directly relevant to the care (or lack thereof) with which Defendants effected the Securitizations, and therefore are relevant both to FHFA's claims and potentially to Defendants' affirmative defenses.

## IV.  STATISTICAL SAMPLING

The parties have agreed that, before January 30, 2012, they shall meet-and-confer regarding the use of statistical sampling as a method of proof in this action, and on or before February 3, 2012, shall jointly report to the Court on the status of those discussions and proposed next steps, if any.

At the December 2, 2011 hearing before this Court, FHFA proposed that statistical sampling of loan files would be an efficient and fair approach in determining whether and/or to what extent there have been material misrepresentations of the quality of the collateral of the underlying residential mortgage-backed securities. With over 530 Securitizations, and most containing several thousand individual loans, there are hundreds of thousands of loans and loan origination and servicing files at issue in these Cases. Many of these loan files may contain upwards of 100 pages, thus representing hundreds of millions of page of documents. Determining a statistically valid random sample that is agreed to by the parties at the outset is an important step to reducing the discovery burdens on the parties, as well as the burden on the Court and parties at summary judgment and trial. The Court agreed at the December 2 hearing that "we need a good sampling technique. That it would be extraordinarily burdensome and inefficient to reassemble, gather, review and analyze all of these files." Transcr. at 35–36.

Although Defendants have stated during the meet and confers that they do not object to FHFA requesting only a sample of the universe of loans at issue, they declined to agree that statistical sampling was a valid method of proof at trial. Any agreement to limit discovery to a statistically valid random sample of loans must be accompanied by an agreement that statistical

10

sampling is an appropriate method of proof at trial. Otherwise, Plaintiff is put in the untenable position of agreeing to limit discovery without any corresponding commitment from Defendants that the Case may be proved at trial with only such discovery.

Moreover, for sampling to be a useful approach, all parties must agree on a statistically valid random sample, preferably at the outset of the litigation in order to avoid disputes down the road as to whether each party's chosen sampling methodology is sound. Defendants' proposed approach of producing only a sample of loans to FHFA in discovery, while permitting Defendants to rely on the entire universe of mortgage loans at summary judgment or trial, accomplishes nothing and prejudices Plaintiff. That is, under Defendants' preferred approach, Defendants could produce and the parties could review tens of thousands of loan files—consuming thousands of review hours and hundreds of thousands of taxpayer dollars—only to have Defendants later claim that FHFA should have chosen a different set of loan files to review. Such an approach would in effect force FHFA to prove its case on a loan-by-loan basis, thus eliminating the benefit of statistical sampling.

In order to prevent such an inefficient and wasteful result, FHFA seeks an approach under which FHFA and Defendants would submit proposed sampling protocols to the Court so that all parties can receive the benefit of the Court's guidance at this early stage of the Cases. Defendants have made no serious counterproposal, but instead seek to delay any resolution of this issue, apparently until such time as FHFA attempts to introduce evidence based on a sample, so that Defendants can *at that time* question the legitimacy of FHFA's sampling methodology. Such an approach would be wasteful, and would represent an inefficient use of both the Court and the litigants' time and resources. Despite the fact that statistical sampling as a scientific method is not a novel concept, Defendants have also stated to FHFA that they need additional

11

information before they can agree to the use of statistical sampling as a method of proof. However, Defendants failed to provide any description of the additional information that they require.

FHFA therefore proposes that the parties take the present opportunity afforded by the Court's consideration of the motion to dismiss in 11 Civ. 5201 to brief the issue of statistical sampling in order to receive guidance from the Court on an appropriate sampling protocol, for discovery, summary judgment and trial.

## V.   PRETRIAL SCHEDULE

As reflected in the Joint Report, the parties reached agreement on a pretrial schedule with respect to Rule 26(f) Conference; Rule 26(a) Disclosures; expert discovery and a pretrial schedule for dispositive motions. However, the parties did not reach agreement on a schedule for the following three issues: (i) whether the parties may proceed with discovery immediately following the Court's decision on the motion to dismiss in 11 Civ. 5201; (ii) whether document custodians and search terms should be exchanged in advance of the decision on the motion to dismiss; and (iii) a schedule for completion of document and deposition discovery.

First, discovery should commence promptly following this Court's decision of the motion to dismiss. To the extent any Defendant believes a stay of discovery is applicable as to those Defendants or in their Case pending resolution of their motion to dismiss, such Defendant may file a motion with the Court. During the pendency of such a motion, there should be no stay of discovery for the reasons previously briefed by FHFA in 11 Civ. 6200 (*FHFA v. Credit Suisse*).

Second, in order to move this case along expeditiously, and to take full advantage of the time afforded by this Court's consideration of the motion to dismiss in 11 Civ. 5201, the parties should exchange custodian lists and search terms in advance of the decision on the motion to dismiss.

Third, in their latest proposal to Plaintiff, Defendants have proposed one year from the completion of Rule 26(a) Initial Disclosures to complete document discovery and another year after the close of document discovery to complete deposition discovery. There is no reason to have such a protracted and extended schedule, and even in complex cases, courts in the Southern District have allowed for much shorter time periods consistent with Plaintiff's proposed schedule. Such an extended delay advocated by Defendants will result in increased difficulties in locating witnesses and fading memories.

Accordingly, FHFA proposes the following schedule for pretrial discovery. Such a focused approach to discovery is consistent with other similarly complex cases:

1. <u>Custodian and Search Term Lists</u>: By January 27, 2012, the parties shall exchange proposed custodian and search term lists. To the extent that the Court finds that Defendants cannot formulate such lists because of their uncertainty as to what custodians or search terms are relevant to the Cases, FHFA should be permitted to serve initial document requests on Defendants to, among other things, provide Defendants with guidance.

2. <u>Sampling</u>: By January 30, 2012, each of FHFA and Defendants shall meet and confer on proposed sampling methodologies for mortgage loan files and shall report to the Court on the status of those discussions and proposed next steps by February 3, 2012. To the extent that Defendants refuse to agree that statistical sampling should be a valid method of proof in the Cases, FHFA will seek leave to file a motion with the Court supporting the use of statistical sampling generally.

3. <u>Rule 26(f) Conference</u>: The parties shall participate in a Rule 26(f) conference within 14 days following this Court's decision on the motion to dismiss in 11 Civ. 5201. In

accordance with Rule 26(f), the parties will have developed a further plan for discovery in advance of the Rule 26(f) Conference.

4. <u>Rule 26(a) Initial Disclosures</u>: The parties shall exchange initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1) within 14 days of the Rule 26(f) Conference. The proposals will set out time frames not to exceed 30 days following this Court's decision on the motion to dismiss in 11 Civ. 5201 to exchange the proposed initial disclosures.

5. <u>Document Discovery</u>: Document discovery will be completed within eight months after the service of the Rule 26(a) Initial Disclosures.

6. <u>Deposition Discovery</u>: Deposition discovery will be completed within five months after the completion of document discovery.

7. <u>Expert Discovery</u>:

    (a) In advance of the deadline to file initial expert reports, each party will disclose the topics of that party's anticipated initial expert reports. Following such disclosure, the parties will meet and confer on any issues where there is a disagreement about which party bears the burden of proof. The parties will also meet and confer about the time to serve responsive reports, and each party reserves its right to seek additional time beyond that specified in (b) and (c) if any expert report is based on analysis of voluminous data.

    (b) Each party who bears the burden of proof concerning an issue with respect to which it intends to submit expert evidence will identify its experts as to that issue, if any, and submit its expert report(s) related thereto, within 60 days after the close of deposition discovery.

    (c) Responsive reports, or initial reports by a party that does not bear the burden of proof concerning an issue, will be due no later than 60 days after the parties have provided their initial expert reports.

    (d) Any expert depositions will commence after the exchange of any responsive reports, and will be completed within 60 days after the parties have exchanged their responsive expert reports.

    (e) Both Plaintiff and Defendants agree to limit their expert reports to one report per subject per Case on behalf of all Defendants in that Case. Similarly, Plaintiff

14

will limit its expert reports to one report per subject per Case. The parties agree to confer in good faith regarding numerical limits on experts in any given case.

8.  Dispositive Motions:

(a)  Summary judgment motions may be filed at any time up to 45 days after the close of expert discovery.

(b)  Oppositions to any motion for summary judgment will be filed within 45 days of the date such motion is filed.

(c)  Reply briefs in support of summary judgment will be filed within 20 days of the filing of the opposition to such motion(s).

\*   \*   \*

In response to the Court's December 5 Order, FHFA has proposed (i) reasonable limitations on depositions, interrogatories, and requests for admission; (ii) the prioritization of the production of certain clearly delineated and readily available categories of documents; and (iii) a pretrial schedule that, among other things, includes a timeline under which the parties would propose custodians and search terms for discovery, as well as determination of a statistical sampling methodology for loan files that would be applicable in discovery and at summary judgment and trial. If adopted, these proposals would allow for the efficient conduct of discovery, and would serve the interests of judicial economy. FHFA is available at the Court's convenience to further discuss its proposal.

Dated: January 10, 2012
New York, New York

Respectfully submitted,

/s/ Philippe Selendy (/JDC)
Philippe Z. Selendy
(philippeselendy@quinnemanuel.com)
QUINN EMANUEL URQUHART &
    SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 100 10
(212) 849-7000

*Attorneys for Plaintiff Federal Housing Finance Agency in FHFA v. UBS Americas, Inc., FHFA v. JPMorgan Chase & Co., FHFA v. Deutsche Bank AG, FHFA v. Citigroup Inc., and FHFA v. Goldman, Sachs & Co.*

/s/ Marc Kasowitz (/JDC)
Marc E. Kasowitz (mkasowitz@kasowitz.com )
Hector Torres (htorres@kasowitz.com)
Michael S. Shuster (mshuster@kasowitz.com )
Christopher P. Johnson
(cjohnson@kasowitz.com)
Michael Hanin (mhanin@kasowitz.com )
Kanchana Wangkeo Leung
(kleung@kasowitz.com)
KASOWITZ, BENSON, TORRES &
    FRIEDMAN LLP
1633 Broadway
New York, New York 10019

*Attorneys for Plaintiff Federal Housing Finance Agency in FHFA v. Ally Financial Inc., FHFA v. General Electric Company, FHFA v. Morgan Stanley, and FHFA v. SG Americas, Inc.*

/s/ Christine Chung (/JDC)
Christine H. Chung
(christinechung@quinnemanuel.com)
QUINN EMANUEL URQUHART &
    SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010

*Attorneys for Plaintiff Federal Housing Finance Agency in FHFA v. First Horizon National Corp., FHFA v. Bank of America Corp., FHFA v. Credit Suisse Holdings (USA), Inc., and FHFA v. Countrywide Financial Corp.*

/s/ Manisha Sheth
Manisha M. Sheth
(manishasheth@quinnemanuel.com)
QUINN EMANUEL URQUHART &
    SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010

*Attorneys for Plaintiff Federal Housing Finance Agency in FHFA v. UBS Americas, Inc., FHFA v. JPMorgan Chase & Co., FHFA v. Barclays Bank PLC, FHFA v. Citigroup Inc., and FHFA v. Merrill Lynch & Co., Inc.*

/s/ Richard Schirtzer (/JDC)
Richard A. Schirtzer
(richardschirtzer@quinnemanuel.com)
Adam M. Abensohn
(adamabensohn@quinnemanuel.com)
QUINN EMANUEL URQUHART &
    SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010

*Attorneys for Plaintiff Federal Housing Finance Agency in FHFA v. HSBC North America Holdings, Inc. and FHFA v. Nomura Holding America, Inc.*